IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 2, 2021 Session

## DENNIS JOSHUA COOPER v. STATE OF TENNESSEE

Appeal from the Circuit Court for Henderson County
Nos. 18-181-2, 18-182-2, 18-183-2, 18-184-2    Donald H. Allen, Judge

_____

### No. W2020-01727-CCA-R3-PC
_____

Petitioner, Dennis Joshua Cooper, was indicted by the Henderson County Grand Jury in four separate cases for 15 drug-related offenses. Pursuant to two plea agreements, Petitioner pled guilty as charged in exchange for a total effective sentence of 20 years. Petitioner filed a pro se petition for post-conviction relief alleging that his guilty pleas were not freely or voluntarily entered and that he received ineffective assistance of counsel. Following an evidentiary hearing, the post-conviction court denied relief. Upon careful review, we affirm the judgment of the post-conviction court. However, we remand the case to the post-conviction court for correction of the judgment forms to reflect the sentences as imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed
and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., joined. NORMA MCGEE OGLE, J., concurred in results only.

Jeremy Epperson, District Public Defender; Brennan M. Wingerter (on appeal), Assistant Public Defender – Appellate Division; and Hayley F. Johnson (at hearing), Assistant Public Defender, for the appellant, Dennis Josh Cooper.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On October 1, 2018, Petitioner was indicted by the Henderson County Grand Jury in four separate cases for 15 drug-related offenses. The trial court held a guilty plea hearing on November 19, 2019. The hearing began with the trial court asking Petitioner whether he wished to enter guilty pleas. Petitioner responded in the affirmative. Petitioner confirmed that plea counsel had reviewed the guilty plea forms with him and that he understood the forms. Petitioner confirmed he would tell the truth during the proceeding. Petitioner confirmed that he was not under the influence of alcohol, narcotics or any other drugs that could impair his judgment.

The trial court read Petitioner his constitutional rights and informed Petitioner of the consequences of entering a guilty plea. Petitioner confirmed that he understood his rights and that by entering his guilty pleas, he was waiving those rights. Petitioner confirmed that he was entering the guilty pleas freely and voluntarily. Petitioner confirmed that he was not under any force, pressure, threats, or promises that would lead him to plead guilty. Petitioner nodded his head in response to the trial court asking whether Petitioner believed pleading guilty was his best course of action.

Petitioner confirmed that he was satisfied with his plea counsel's representation. Petitioner confirmed that plea counsel had fully advised him of his possible legal defenses. Petitioner confirmed that he fully understood his actions in pleading guilty. The trial court thoroughly explained each of Petitioner's charges and asked him whether he was pleading guilty in each case. The trial court reviewed the plea bargain agreement.

The trial court asked whether Petitioner had any questions. Petitioner replied, "No." The trial court asked Petitioner if he still wanted to proceed with the guilty pleas and Petitioner said, "Yeah." The trial court requested the State to provide factual summaries of the charges in each case. The State responded:

Case Number 18-181-2:

[T]he State would show at trial in this matter that [Petitioner] on November 20th of 2017, November 22nd, 2017 and November 29th, 2017, did unlawfully and knowingly sell and delivery [sic] methamphetamine, a Schedule II controlled substance, in violation of [T.C.A. §] 39-17-434. Your Honor, in buy one that was conducted on 11/20/17 was .82 grams, buy two on 11/22/17 was .75 grams and buy three on 11/29/17 was .44 grams. All of those were conducted here in Henderson County, Tennessee.

Case Number 18-182-2:

[This] was also another undercover buy. This was conducted after [Petitioner] had made bond. Your Honor, what happened was we did the three undercover buys and we executed a search warrant. Those were the basis of the charges in 18-183[-2]. He made bond on that search warrant and while he was out on bond in that case on March 29th, 2018, he did again sell and deliver methamphetamine also again over .5 grams in violation in [sic] of [T.C.A. §] 39-17-434. Your Honor, that was .85 grams on 3/29/18.

Case Number 18-183-2:

[T]he State would show that on December 5th, 2017 that [Petitioner] in this case did unlawfully possess with intent to sell and deliver methamphetamine over .5 grams in violation of T.C.A. [§] 39-17-434. He also was in possession of marijuana in violation of T.C.A. [§] 39-17-418 and also did use or possess drug paraphernalia in violation of [§] 39-17-425.

Your Honor, after the initial buys that were conducted in November in Case No. 181, officers did execute a search warrant on December 5th of 2017, the basis of the charges in [Case No. 183]. [Petitioner] was found to be in possession of 6.88 grams of methamphetamine and .10 grams of marijuana and also digital scales which were the basis of the paraphernalia charge.

Case Number 18-184-2:

[Y]our Honor, this involves both [Petitioner and his wife]. On April 3rd, 2018, [Petitioner and his wife] in this case were unlawfully and knowingly in possession of methamphetamine, a Schedule II controlled substance, over .5 grams with intent to sell and deliver and also were in possession of drug paraphernalia in violation of T.C.A. [§] 39-17-425.

Your Honor, in this case after [Petitioner] was arrested in Case No. 183 in the lower court and had made bond, officers then learned that [Petitioner] was perhaps selling methamphetamine again and they conducted that second buy which occurred on March the 29th of 2018. After that buy was conducted then on this date which was April the 3rd of 2018 then the[y] conducted a second search warrant at the location of [Petitioner and his wife]. They were found to be in possession of methamphetamine 7.08 grams. They were actually on the person of [Petitioner's wife] and a digital scale was recovered also again.

- 3 -

Petitioner agreed with the State's factual summaries. The trial court found that Petitioner's decision to enter the guilty pleas was "freely, voluntarily, knowingly, and intelligently made and that there [was] a factual basis for [his] plea on all counts in all cases." The trial court accepted the pleas. The trial court sentenced Petitioner to a total effective sentence of 20 years.

Petitioner filed a pro se petition for post-conviction relief alleging that his guilty pleas were unknowing and involuntary and that he received ineffective assistance of counsel. The post-conviction court appointed counsel for Petitioner and held an evidentiary hearing on December 1, 2020.

At the evidentiary hearing, Petitioner testified he completed twelfth grade and received a special education diploma. Petitioner explained that because of his learning disability, he was unable to work and received disability payments "all [his] life." Petitioner remembered his plea counsel and stated that plea counsel represented him in several cases. Petitioner recalled that his wife was charged in one of the cases along with Petitioner and that plea counsel represented both of them.

Petitioner remembered the facts of his and his wife's arrest in April of 2019. Petitioner testified that he was arrested outside of his house and admitted to having drug paraphernalia. An hour and 45 minutes after his arrest, Petitioner's wife apparently "pulled [roughly 7 grams of methamphetamine] out of her bra and gave it to [the detective] and said that it was [Petitioner's.]" Petitioner said that he and his wife had separated in November of 2018. Petitioner knew plea counsel also represented his wife. Petitioner said that he did not sign "no kind of paper" regarding a conflict of interest. Petitioner restated that he received disability payments "for [his] mind." He explained, "[I] can't read and write and I don't like get, like – I know a lot, but I don't understand a lot that goes on." Petitioner said he had lived with his mother his whole life.

Petitioner testified that he spoke with mental health professionals on four occasions. When asked whether plea counsel pursued or discussed a diminished capacity defense with Petitioner, Petitioner said, "I don't even know what that is." Petitioner testified that he "didn't really understand" what was going to happen if he pleaded guilty. He said, "You know, I just knew I took a 20[-]year plea." Petitioner said that plea counsel met with him four or five times over 14 months. Post-conviction counsel asked Petitioner if plea counsel reviewed discovery with him. Petitioner replied, "We never sat down and went through the motion."

- 4 -

On cross-examination, the State asked Petitioner if he swore to a petition in this matter. Petitioner responded, "Whatever a petition is I reckon." Petitioner confirmed that he knew he was at the post-conviction hearing because of his petition. Petitioner said that he could not read, but a "legal aid" helped prepare his petition and reviewed it with him.

Petitioner admitted that he had previously entered guilty pleas in 2005 and 2008. Petitioner confirmed that at those guilty plea hearings, the trial court explained to him his constitutional rights. Petitioner admitted that he understood his rights at the time. Petitioner admitted that he understood his guilty pleas and the length of his sentence in the current matter. Petitioner admitted that the trial court explained to him his constitutional rights and that he understood them. Petitioner confirmed that he fully understood his actions when he pleaded guilty at the hearing on November 11, 2019.

On redirect examination, Petitioner testified that his "legal aid" prepared his petition based on their conversations and his "paperwork." Petitioner confirmed that the "legal aid" read the petition to him. On recross-examination, Petitioner admitted he did not tell the "legal aid" what information to include in the petition.

Plea counsel testified that he had practiced law for 16 years. Plea counsel stated that 99 percent of his practice consisted of criminal defense work. Plea counsel recalled that he had represented Petitioner and Petitioner's family for many years.

Plea counsel testified that there was an "extensive preliminary hearing" to address both of Petitioner's arrests. Plea counsel confirmed that he "obtain[ed] a substantial amount of knowledge as to what the State's evidence was" at the preliminary hearing. After the preliminary hearing, plea counsel requested discovery and photocopied all four case files to share with Petitioner. Plea counsel disagreed with Petitioner's statement that plea counsel did not review the discovery materials with Petitioner. Plea counsel testified that he reviewed the discovery materials with Petitioner "in the attorney/client room outside of [Petitioner's] pod[.]"

Plea counsel recalled meeting with Petitioner on a regular basis. In fact, plea counsel testified, "Each time I came to the jail to meet with a client especially if it was somebody in [Petitioner's] pod, he would stick his head in and we would talk about the case and he would make a different pitch for me to make to the State as far as plea negotiations went."

Plea counsel said that at the insistence of Petitioner's family, plea counsel requested a forensic interview. Plea counsel said the initial evaluation determined Petitioner was not competent to stand trial. However, after additional testing, the mental

health professionals determined Petitioner understood "the nature and seriousness of the crimes[.]" Plea counsel said, "The ultimate diagnoses [sic] was that there was some malingering that was involved." Plea counsel confirmed that Petitioner was not truthful during his forensic interviews. Plea counsel estimated Petitioner "would have been at least a Range [II] based on his prior criminal history and possibly a Range [III.]" Plea counsel confirmed that after negotiating with the State, he obtained a plea deal for Petitioner. Plea counsel testified that Petitioner could have received a much harsher sentence if the case had gone to trial. Plea counsel confirmed that the evidence against Petitioner was substantial.

On cross-examination, plea counsel confirmed that after Petitioner's first mental evaluation, he was deemed not competent to stand trial. Plea counsel said that the State filed a motion for additional counseling and possible rehabilitation. The trial court ordered the additional counseling. Plea counsel admitted he did not discuss retaining a forensic expert to interview Petitioner and did not discuss "a diminished capacity defense."

Plea counsel admitted Petitioner's wife was charged in one of Petitioner's four cases. Plea counsel testified that Petitioner's description of the April 2019 arrest was "pretty accurate." Plea counsel said the State was pursuing a criminal responsibility charge against Petitioner because Petitioner's wife told law enforcement that Petitioner "handed her the drugs to hide" when he saw them approaching. Plea counsel confirmed Petitioner's wife pled guilty based on criminal responsibility. Plea counsel stated, however, "[Petitioner's] position from the time that they were both arrested was that he wanted to take those charges so that she wouldn't be charged because it would affect the custody of her son, but the State at no point offered to dismiss charges against either one of them on it." Plea counsel recalled that Petitioner and Petitioner's wife were not divorced when he represented them. Plea counsel did not recall whether Petitioner signed a waiver for a potential conflict of interest. Plea counsel testified that Petitioner and Petitioner's wife met with plea counsel and he told them "if they ever got sideways from each other or even began to point the finger at the other than [he] couldn't represent either one of them."

After hearing the arguments, the post-conviction court accredited plea counsel's statement that he regularly met with Petitioner while Petitioner was in jail. The post-conviction court accredited plea counsel's statement that the proof against Petitioner was substantial. The post-conviction court accredited plea counsel's testimony that he received full discovery and reviewed it with Petitioner. The post-conviction court stated, "Apparently [Petitioner] was found to be malingering." The post-conviction court asked plea counsel whether he reviewed the notice for enhanced punishment with Petitioner and plea counsel said, "Charge by charge and line by line." The post-conviction court

reiterated Petitioner's responses at the guilty plea submission hearing. The post-conviction court found that Petitioner failed to carry his burden to show that he entered his pleas unknowingly and involuntarily. The post-conviction court agreed with plea counsel that Petitioner could have received harsher sentences for his offenses. The post-conviction court stated, "[Petitioner] hasn't even stated today what the deficiency was[]" and, "You know, I haven't heard anything that says [plea counsel] did anything wrong or should have done something different."

In a written order, the post-conviction court denied relief. The post-conviction court found that plea counsel conducted "a thorough cross[-]examination of the [S]tate's witnesses" at the preliminary hearing and accredited his statement that the State had "substantial" evidence against Petitioner. The post-conviction court found that plea counsel obtained a "very favorable plea agreement" for Petitioner. The post-conviction court found that based on plea counsel's testimony, there "was some malingering in [Petitioner's] interview with the mental health professionals." The post-conviction court reviewed the plea hearing transcript and concluded that Petitioner presented no evidence or testimony to contradict the court's guilty plea findings that the pleas were knowingly and voluntarily entered. The post-conviction court concluded that plea counsel was not deficient as Petitioner had failed to show "any prejudice by anything that [plea counsel] did or did not do in this matter." Petitioner now appeals.

*Analysis*

Petitioner argues on appeal that the post-conviction court erred in denying post-conviction relief because Petitioner's guilty pleas were not knowingly or voluntarily entered. Petitioner also claims that he received ineffective assistance of counsel as a result of a conflict of interest. The State responds that the post-conviction court properly denied relief. The State argues that Petitioner failed to include his claim of ineffective assistance of counsel in his petition and therefore the issue is waived for appellate review. Additionally, the State contends that Petitioner has failed to show deficiency or prejudice.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions

concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

### I.    Guilty Pleas

To satisfy constitutional standards of due process, a guilty plea must be entered knowingly, intelligently, and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). This Court may consider the following circumstantial factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from trial.

*Blankenship v. State*, 858 S.W.2d 897, 905 (Tenn. 1993). "[A] plea is not 'voluntary' if it results from ignorance, misunderstanding, coercion, inducements, or threats." *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "Before a Tennessee court can accept any guilty plea, the court must determine that the defendant is pleading guilty voluntarily and with an understanding of the nature of the plea and its consequences" and that there is an adequate factual basis for the plea. *Hicks*, 983 S.W.2d 240 at 247. A defendant's solemn declaration in open court that his plea is knowing and voluntary creates "a formidable barrier in any subsequent collateral proceeding" because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner argues that because of his mental deficiencies, he did not enter the guilty pleas knowingly or voluntarily. The record shows that while Petitioner has a learning disability, he completed twelfth grade and received a special education diploma.

Petitioner testified that he cannot read or write, that he lived with his mother, and that he had received disability payments his whole life. However, the trial court thoroughly reviewed each charge in all four cases with Petitioner. The trial court reviewed the plea agreement with Petitioner. Petitioner confirmed that he understood the terms of the plea agreement. He also admitted that he had previously entered guilty pleas in at least two other criminal matters and been informed of his constitutional rights during those hearings.

During the post-conviction hearing, Petitioner testified that he received mental evaluations on four occasions. The technical record contains only one mental evaluation from Western Mental Health Institute, and it states that Petitioner was competent to stand trial. Plea counsel testified that "[t]he ultimate diagnoses [sic] was that there was some malingering that was involved." Post-conviction counsel did not object to this statement or offer any rebuttal.

The post-conviction court found that plea counsel met with Petitioner "on numerous occasions." The post-conviction court found that plea counsel reviewed full discovery with Petitioner. It is clear from the record that the trial court explained each individual charge against Petitioner and the consequences of pleading guilty to the charges, and Petitioner's actions in entering the pleas were both knowing and voluntary. Plea counsel testified that based on Petitioner's prior convictions, that Petitioner could have received a sentence much longer than the 20 years he received in exchange for his pleas. The evidence does not preponderate against the post-conviction court's findings and conclusions. Petitioner is not entitled to relief on the basis that his guilty pleas were unknowingly and involuntarily entered.

## II.    *Ineffective Assistance of Counsel*

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two-prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on

the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

"Before a petitioner may obtain post-conviction relief on the ground of a conflict of interest, he must establish by a preponderance of the evidence that: (a) an actual conflict of interest existed; and (b) the conflicting interest adversely affected the performance of counsel. *Antoine Cardet Smith v. State*, No. M2017-000600-CCA-R3-PC, 2017 WL 4861955, at *3 (Tenn. Crim. App. Oct. 26, 2017) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980)), *no perm. app. filed*. "A mere 'potential conflict of interest' serves as no basis for a claim of ineffective assistance of counsel." *Clifton D. Wallen v. State*, No. E2000-02052-CCA-R3-PC, 2001 WL 839533, at *1 (Tenn. Crim. App. July, 25, 2001), *perm. app. denied* (Tenn. Dec. 27, 2001). Under the Tennessee Rules of Professional Conduct, a concurrent conflict of interest exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Tenn. Sup. Ct. R. 8, RPC 1.7(a).

The State argues Petitioner waived his ineffective assistance of counsel claim by failing to specifically include it in his petition for post-conviction relief. Petitioner and plea counsel both testified at the post-conviction hearing that plea counsel represented Petitioner and his wife as co-defendants. Plea counsel testified that he did not have

Petitioner or his wife sign a conflict of interest waiver form. Albeit brief, post-conviction counsel argued that plea counsel's joint representation of Petitioner and his wife affected Petitioner's guilty pleas. The State did not raise a defense of waiver during the post-conviction hearing, and the post-conviction court ruled generally on the ineffective assistance of counsel claim. *See Walsh v. State*, 166 S.W.3d 641, 645 (Tenn. 2005) (concluding that the State's waiver argument itself had been waived for failure to assert the defense during the post-conviction hearing); *see also Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (stating that "Tennessee appellate courts may only consider issues that were not formally raised in the post-conviction petition if the issue was argued at the post-conviction hearing with no objection and decided by the post-conviction court without objection."). We conclude Petitioner's claim is not waived.

Petitioner cites to Rule 1.7 of the Rules of Professional Responsibility to support his ineffective assistance of counsel argument. However, Petitioner offered minimal evidence at the post-conviction hearing to establish an actual conflict of interest. Petitioner testified that his wife made a statement to law enforcement that he gave her his drugs to hide them. Despite this statement, plea counsel testified, "[Petitioner's] position from the time that [he and his wife] were both arrested was that he wanted to take those charges so that she wouldn't be charged because it would affect the custody of her son, but the State at no point offered to dismiss charges against either one of them on it."

Petitioner relies on an "inherent conflict of interest" in the joint representation of Petitioner and his wife to establish prejudice. The post-conviction court found that plea counsel "performed within the bounds of attorneys practicing in these matters." The post-conviction court correctly concluded that there was no "showing of any prejudice by anything that [plea counsel] did or did not do in this matter." The evidence does not preponderate against the post-conviction court's findings. Accordingly, Petitioner is not entitled to relief.

### III.    Judgment Forms

Finally, as first mentioned in Petitioner's brief and later admitted by the State at oral argument, there are several errors in the 15 form judgments that improperly reflect Petitioner's pleas and effective sentences. In the record before us, there are four pieces of evidence that reflect Petitioner's agreed upon sentence: (1) the transcript of Petitioner's plea colloquy;[1] (2) Petitioner's Plea documents dated November 19, 2019; (3) the form judgments for all counts of the four indictments; and (4) testimony from the post-

---

[1]  Although the cover page to this transcript indicates November 11, 2019, the Court Reporter's attestation page certifies the proceeding was held on November 19, 2019. There is no explanation in the record for this discrepancy.

conviction hearing. None of the documents are completely consistent with one another. What is consistent is the agreed upon sentence was to be an effective sentence of 20 years, as a Range I offender, to be served in the Department of Correction.[2] The plea transcript makes this crystal clear. Statements made by Petitioner at both his plea and post-conviction hearings, his plea counsel, the State, the plea Court, and his post-conviction counsel leave no room for doubt about the agreed upon effective sentence. Notations throughout the plea forms support an effective 20-year sentence. The problem is, the form judgments, when viewed in isolation, do not reflect the agreed upon pleas and sentences.[3] This problem does not support granting relief for any of the claims raised in Petitioner's Post-Conviction pleadings. To be clear, the effective sentence that Petitioner voluntarily and knowingly agreed to, with the assistance of effective counsel, was 20 years, as a Range I offender. The messiness comes in the paperwork and the judgment forms simply must be corrected to reflect the correct result.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed. On remand, the post-conviction court should enter corrected judgment forms to reflect the proper agreed sentences.

_____
TIMOTHY L. EASTER, JUDGE

---

[2] The imposition of fines totaling $12,550 are also consistently reflected by the record.

[3] As examples, the judgments in case 18-181-2, counts 5 and 6, indicate the amount of the methamphetamine involved was over .5 grams and a sentence of 10 years for each count. The plea transcript and plea documents evidence an amount less than .5 grams and a sentence of 6 years for each Count. The judgments in case 18-183-2, counts 2 and 3, are not noted as merged as announced and agreed to, arguably increasing Petitioner's sentence by 10 years. The record also supports six separate offenses dates (November 20, 22, 29, 2017, December 5, 2017, March 29, and April 3, 2018). According to statements made by the assistant district attorney at the plea hearing, Petitioner was on bond when he committed the offenses in case 18-182-2 (March 29, 2018) thus invoking mandatory consecutive sentencing. This also appears to be the circumstance in case 18-184-2, which involves an offense committed on April, 3, 2018. The mandatory sentencing alignments are not at all clear in all four cases as reflected on the judgment forms.